AUSTIN BROOKS & wife *vs.* INHABITANTS OF PETERSHAM.

On the trial of an action against a town for an injury occasioned by insufficient width of and other defects in a highway, the plaintiff may introduce evidence of its width nine months after the injury, in connection with evidence that the width has not been changed meanwhile.

On the trial of an action against a town for an injury, received by the plaintiff while driving over a highway, and occasioned by a defect in the way, the jury were instructed that "if the original cause of the accident was a defect in the highway for which the town was liable, and which frightened the plaintiff's horse, causing him to run, the mere want of prudent management on the part of the plaintiff or another person in the vehicle after the horse began to run, or the mere fact that the plaintiff's companion imprudently seized the reins and turned the horse from the road, would not exonerate the defendants." *Held,* that the defendants had good ground of exception.

ACTION OF TORT for injuries sustained by the female plaintiff in a highway, which the defendants were bound to keep in repair.

At the trial in the superior court before *Russell,* J., it appeared that on the 18th of July 1858 Mrs. Brooks was driving along the way a horse attached to a vehicle, in which she and another person were sitting; that at the top of a hill the horse began to run, and after he had run some forty rods the wheel of the carriage struck against a rock projecting above the ground near the travelled part of the way between the ditches on each side of it, and Mrs. Brooks was thrown out and injured.

The plaintiffs claimed that the way, where the horse began to run, was so soft and uneven as to be defective, and that this condition of the way frightened the horse and was the cause of his running; and they also relied upon the narrowness of the way, the depth of the gutters near the sides of it, and the projecting rock, on which the wheel struck, as defects; all of which the defendants denied, and much evidence on these points was introduced by both parties.

The plaintiffs called a witness, who testified that he made some measurements of the way in April 1859; and the presiding judge, against the defendants' objection, permitted this witness to state the width of the way between the ditches and the width of the travelled part of the way on the 1st of April 1859. The plaintiffs afterwards offered evidence tending to show that between that time and the time of the injury there had been no change in these dimensions.

The defendants offered evidence tending to show that Mrs. Brooks was able to guide the horse during his running, and would have passed safely down the hill, but that her companion, who was an insane woman, became excited when the horse began to run, seized and obtained control of the reins, and, in spite of her remonstrances, turned the horse out of the travelled part of the way.

The judge, at the defendants' request, instructed the jury as follows: " The law is well settled, that if the negligence of a third person occasioned the injury, the town is not liable. If then the horse started to run away, from a cause for which the defendants were not at fault, and if a person in the vehicle, not possessing competent skill or intelligence to drive, obtained

the control of the reins and turned the vehicle out of the trav-
elled path on to the rock under the excitement of fear, and such
turning caused or contributed to the accident, then the plain-
tiffs cannot recover."

The judge, against the defendants' objection, further in-
structed the jury thus: " But if the original cause of the ac-
cident was the fact that the horse was frightened and caused
to run by a defect in the road, for which the town was liable,
and the horse was a proper horse for a prudent person to drive,
and properly driven, then the mere want of prudent manage-
ment on the part of Mrs. Brooks or her companion, after the
horse began to run, or the mere fact that she imprudently seized
the reins and turned the horse from the road, would not exon-
erate the defendants. All that is required in such circumstances is
such a degree of care and prudence as the situation of the party
would naturally or probably admit, and due allowance is to be
made for the natural alarm caused by such an accident.    If
through the fault of the town in having a defective highway, these
parties were placed in an exciting and alarming situation, then the
law only requires such care as is natural in such a situation."

The jury returned a verdict for the plaintiffs, and the defend-
ants alleged exceptions.

*C. Devens, Jr. & G. F. Hoar,* for the defendants.

*P. C. Bacon & P. E. Aldrich,* for the plaintiffs, cited *Lund* v.
*Tyngsboro,* 11 Cush. 563; *Palmer* v. *Andover,* 2 Cush. 608;
*Ingalls* v. *Bills,* 9 Met. 1; *Stokes* v. *Saltonstall,* 13 Pet. 181;
Redfield on Railways, 334 & note.

BIGELOW, C. J.    The objections urged to the evidence which
was offered to show the width of the road at the place of the
accident several months after it happened go to its weight and
not to its competency.    The condition of the road at the time
the occurrence took place was undoubtedly the real subject of
inquiry.    But in those particulars in which it was proved to
have remained unchanged, its subsequent condition was direct
evidence bearing on its safety and convenience previously.    An
accurate measurement of the road from side to side, and of the
width of the travelled path, is often essential to enable the jury

to pass intelligently on the issue presented to them in cases similar to the one at bar; and there can be no danger in admitting evidence of such facts, although ascertained subsequently to the time when the alleged defect in the highway is said to have existed, if it is accompanied by proof that no material change has taken place which can affect the accuracy of subsequent observations.   *Aldrich* v. *Pelham*, 1 Gray, 510.

The instructions given to the jury seem to have been full and for the most part correct, and well adapted to the facts in proof. But in one respect they were defective, and tended to mislead the jury in weighing the evidence bearing upon one of the essential issues in the case.   The plaintiff was bound to use ordinary care as well after as before the horse began to run, in consequence of the defect in the road.   She could not abandon herself to needless alarm or give up all proper control of the horse, in consequence of the peril to which she was exposed by the negligence of the defendants in omitting to keep their road in suitable repair.   She was still bound to use such care as a person of ordinary prudence and discretion would exercise if placed in similar circumstances and exposed to a like danger, making due allowance for the alarm into which she and her companion were thrown by the occurrence of the accident.   If such care had been used, the horse might have been kept under control so as to avoid the defect in the road.   The error in the instructions was that the jury were told that "the mere want of prudent management on the part of Mrs. Brooks or her companion after the horse began to run, or the mere fact that she imprudently seized the reins and turned the horse from the road, would not exonerate the defendants."   This in effect left the jury to find a verdict for the plaintiff, although she was guilty of a want of ordinary care which contributed to the accident.   Imprudence implies a want of due care.   Being of opinion that the residue of the instructions was not sufficient to do away with the erroneous impression which the jury might well have derived from this portion of the charge, we feel compelled on this ground to order a new trial.

*Exceptions sustained.*